GRANGER v. GRANGER.

1. DOWER—ANTENUPTIAL CONVEYANCE—GOOD FAITH—FRAUD.

An antenuptial conveyance made in good faith will defeat a claim for dower but such a conveyance made by a man without the knowledge of his intended wife and for the purpose of defeating the interest which she would acquire in his estate by the marriage is void as to the wife and will be set aside by a court of equity on the ground that it is a fraud upon the marital rights of the wife.

2. SAME—ANTENUPTIAL CONVEYANCE—FRAUD—EVIDENCE—CONSIDERATION—EQUITY.

Antenuptial conveyance of all of man's realty seven days before marriage to plaintiff for alleged release of debts owed by him to grantee, a nephew of the grantor and brother-in-law of plaintiff wife, held, in fraud of plaintiff's dower right where made without her knowledge, evidence shows she was 41 years of age, grantor 63; conveyance, recorded after the marriage, left him insolvent and upon his death would leave her destitute; consideration for the conveyance was totally inadequate; and grantee, upon death of grantor, still had a property interest greatly in excess of all debts against grantor of which there is any proof or even claim.

Wrong to third person by transferor, see Restatement, Restitution, § 168; by transferee, § 169.

3. Same—Laches—Setting Aside Antenuptial Conveyance.
    Plaintiff who commenced suit to declare dower rights in prop-
        erty which had been conveyed to defendant only seven days
        before plaintiff married grantor, who, at 63, was 22 years her
        senior, within a year from the time the conveyance was made
        and only a few months after learning of it, was not guilty of
        laches where grantee, the grantor's nephew, had received only
        the fee, a life estate having been reserved in the grantor.

SHARPE, C. J., and NORTH and WIEST, JJ., dissenting.

Appeal from Eaton; Telfer (Laurie O.), J., pre-
siding. Submitted October 24, 1940. (Docket No.
137, Calendar No. 41,244.) Decided February 7,
1941.

Amended bill by Winifred Merrill Granger against
Sylvester B. Granger to establish dower rights in
land owned by her now deceased husband prior to
their marriage. Decree for plaintiff. Defendant
appeals. Affirmed.

*George W. Watson* (*Martin D. Verdier,* of coun-
sel), for plaintiff.

*T. Carl Holbrook* and *Rex A. Spafford,* for de-
fendant.

McALLISTER, J. Plaintiff filed her bill of com-
plaint to establish dower rights in real estate which
was owned by her now deceased husband, William
R. Granger, prior to their marriage on August 3,
1937. Defendant is the nephew of the deceased who
claims ownership of the property in question by
virtue of a deed from his uncle, which was executed
just before plaintiff's marriage. It was claimed by
plaintiff that the conveyance worked a fraud upon
her and was without adequate consideration. De-

fendant maintains that there was no plan to defraud plaintiff of her dower rights and that the consideration for the conveyance was both valuable and sufficient. Subsequent to the filing of her bill of complaint, plaintiff's husband died. The trial court awarded plaintiff a decree, and defendant appeals.

From the evidence it appears that plaintiff and William R. Granger had been acquainted over a period of many years. He had often visited at the home of her father, Mr. Merrill, one of whose daughters is the wife of William R. Granger's nephew, the defendant in this case; so that plaintiff is not only the widow of defendant's uncle, but is also the defendant's sister-in-law. Plaintiff and her husband were seen together frequently for a period of approximately six months before their marriage. On July 2, 1937, plaintiff made application for a license to marry William R. Granger at the office of the county clerk of Eaton county. The license was issued July 7, 1937, and mailed to plaintiff in Grand Rapids, where on August 3, 1937, the parties were married.

On July 27, 1937, seven days before the marriage, William R. Granger conveyed all of his real estate to his nephew, the defendant Sylvester Granger, reserving a life estate therein. The consideration to grantor by defendant is claimed to be a release of indebtedness and the execution of an additional contract extinguishing further indebtedness. A certain part of the real estate conveyed had previously been sold by defendant to plaintiff's husband for $4,000. As part of the payment, defendant had received a note from William R. Granger for $3,500. The amount owing by William Granger to defendant on this note at the time of the conveyance of all of his real estate to defendant was $2,904. Subsequent to

the conveyance of all of the real estate to defendant by William, but on the same day, a contract was entered into between William and defendant's father, George Granger, and defendant, Sylvester. This recited that William and George had conveyed their property to Sylvester; that each of the said grantors would have the use and income of their property during their lives; that William would pay an amount each month sufficient, when added to the income from George's property, to provide an income of $70 per month to George, with the proviso that the amount to be paid by William to provide such an income for George should not exceed $35 per month. The agreement further provided that all indebtedness owing by William to Sylvester or to the estate of Frances Nixon, of which estate Sylvester and George were the sole residuary legatees, was by the contract cancelled and discharged. William's indebtedness to the Nixon estate is conceded to have been, at the time of the agreement, the sum of $5,000. The value of all of William's property which was conveyed to Sylvester was found by the trial court to amount to at least $22,000. It is further claimed by defendant that William was indebted to him for more than $3,000 for rentals covering a period of 13 years on the property which William thereafter purchased from defendant, and which he subsequently reconveyed on July 27, 1937. It is contended by defendant that the consideration for William's conveyance of all of his property was the cancellation of the aggregate of the indebtedness of $2,904 on the real estate note, the $5,000 obligation to the Nixon estate, and the sum of approximately $3,000 for rentals.

The trial court found that the consideration for William's conveyance of property valued at $22,000 was merely the cancellation of the note for $2,904;

that the consideration for the cancellation of William's indebtedness of $5,000 to the Nixon estate was his covenant to insure an income for his brother, George, as provided in the agreement between George, Sylvester, and William; and that the item for rentals of approximately $3,000 never entered into the consideration, either for the conveyance or for the subsequent contract.

While the consideration recited in the conveyance was stated to be one dollar and other valuable consideration, we are persuaded that the conclusion of the circuit court was correct, and that the consideration for the conveyance was the cancellation of the note for $2,904. There is no question that this obligation was cancelled in some one of the transactions between the parties. It was not cancelled in the contract between George, Sylvester, and William, as that contract specifically states "that in consideration of the amounts herein provided to be paid by William R. Granger from time to time, that *all indebtedness owing him to Sylvester B. Granger* or to the estate of Frances Nixon, of which estate Sylvester B. and George L. Granger are the sole residuary legatees, said indebtedness *being in the sum of approximately $5,000* is hereby cancelled and discharged." The failure to mention the note of $2,904 in this subsequent contract as being an obligation which was extinguished and the reference to all indebtedness owing to Sylvester or to the Nixon estate, being in the amount of $5,000, leads to the inevitable conclusion that the note for $2,904 had been previously cancelled as part of the consideration for the conveyance. Furthermore, the omission of any claimed obligation of rent as owing by William to Sylvester in the instrument in which all indebtedness to Sylvester, totaling $5,000, was extinguished, seems conclusive that no cancellation of

the claim for rentals was made part of the contract. We are of the opinion that the trial court properly concluded that the so-called rentals were no part of the consideration for either the conveyance or the contract. After all of the alleged rentals had accrued, defendant had sold to his uncle, in 1929, the very property for which rentals are claimed to have been due, and it is beyond credence that, when William paid for this property, there would be no settlement or adjustment of such an indebtedness. The contract cancelling the $5,000 indebtedness was made subsequent to the conveyance, and the agreement itself recited that William had previously conveyed the real estate to Sylvester, reserving a life estate in himself.

Under the circumstances of this case, it is plain that the conveyance of property valued at $22,000 for the cancellation of a note for $2,904 was based upon a consideration grossly inadequate. Even if it were conceded that not only the note of $2,904 but also the obligation to the Nixon estate of $5,000 was cancelled by reason of the conveyance, there would be a consideration of the cancellation of only $7,904 for real estate valued at $22,000, at least.

Defendant knew that plaintiff and his uncle had been spending considerable time with each other for a period of six months prior to the marriage. In his answer to plaintiff's bill of complaint, defendant admitted on information and belief "that for a time prior to said marriage" the said William R. Granger and said plaintiff "had been going together." It appeared that some months after the marriage, plaintiff and her husband had called upon Mr. Towner, a banker who handled all of the business and financial affairs of William R. Granger. At that time Mr. Granger told Mr. Towner that he was having financial difficulties with his wife and that

she thought his income was much more than it was; that she did not know until her conversation with the banker that the house in which they were then living had been deeded away by her husband.

Under the foregoing facts, the question for determination is whether the conveyance by her husband of all his property seven days before her marriage to him was actually or constructively fraudulent as to plaintiff.

Where an antenuptial conveyance is made in good faith, it will defeat a claim for dower. *Noah* v. *Noah,* 246 Mich. 324; but a conveyance made by a man without the knowledge of his intended wife, and for the purpose of defeating the interest which she would acquire in his estate by the marriage, is void as to the wife and will be set aside by a court of equity on the ground that it is a fraud upon the marital rights of the wife. 19 C. J. p. 514.

We are of the opinion that the conveyance in question worked a fraud upon the plaintiff. She had known William Granger for many years; they had lived in the same small community; her father and Granger were very close friends; their families were not only friendly but were intermarried. Every inference to be drawn from the evidence shows that plaintiff, before her marriage, undoubtedly considered Granger a man of some substance, as, in fact, he was. There seems no question but that she was surprised and disappointed to learn of his financial situation after her marriage when she discovered that he had conveyed away all of his property. She was 41 years old at the time of her marriage and was the mother of a 15-year old daughter. Her husband was 63 years of age. She had an expectancy of life for many years; his, on the contrary, was much less. The conveyance of this property not only left him insolvent but would leave her

penniless and destitute in case of his death. The circumstances with regard to the conveyance such a short time before the marriage, and not recorded until afterward, raise a strong suspicion that its purpose was to keep her from becoming the owner of the property in case of his death or to deprive her of her dower rights therein. The fact that this man and woman of considerable difference in age were "going together" for several months before the conveyance and the marriage, and were known by defendant to be doing so, is significant, especially in view of the fact that either defendant or his father would have interests of inheritance in the property in case of his uncle's death unless the uncle married again. Added to these circumstances is the fact of the totally inadequate consideration for the conveyance. With the allowance of dower rights to plaintiff, defendant would still have a property interest in the real estate conveyed by his uncle of a value greatly in excess of all of the indebtedness against William Granger of which there is any proof or even claim.

With regard to the defense of laches, plaintiff commenced her suit within a year from the date of conveyance. In the meantime defendant had received nothing but the fee, the beneficial interest of the life estate being then outstanding. We are in accord with the circuit court that there is no proof of laches on the part of plaintiff.

Upon an examination of the record, we are wholly in agreement with the trial court in decreeing dower rights to plaintiff.

Decree affirmed, with costs to plaintiff.

Bushnell, Chandler, and Butzel, JJ., concurred with McAllister, J.

WIEST, J. (*dissenting*).  An examination of the record and the exercise of ordinary discernment in the premises leads me to disagree with the views expressed by Mr. Justice McALLISTER.

William R. Granger, plaintiff's designed husband, was indebted to his nephew, Sylvester B. Granger, to an amount between $7,000 and $8,000, some of which was evidenced by notes, and, before the marriage planned by plaintiff, satisfied such indebtedness on July 27, 1937, by a quitclaim deed of his property to his nephew, reserving, however, the use, income, occupancy, and management of the property during his lifetime.  He was then 63 years of age and had an expectancy of life for 11 years.  The property was income-producing and, above expenditures, provided the life tenant a substantial income. The transaction was the culmination of discussions and conferences between the · parties covering a period of more than eight months.

July 2, 1937, plaintiff applied to the Eaton county clerk for a license to marry William R. Granger and directed the license to be mailed to her at Grand Rapids.  The marriage ceremony was performed in Grand Rapids on August 3, 1937.

Plaintiff was not a witness at the hearing and Mr. Granger, her husband, being then deceased, we have no explanation of the somewhat unusual circumstance of the woman taking out the marriage license. Neither have we any information as to why the bonds of matrimony were left unfastened for such a length of time.

The deed in question was prepared by a banker who had transacted business affairs for William R. Granger for many years, including management of his property, and who was to continue management under the life estate and who testified that it was

the result of negotiations extending over many months.

It is evident that such negotiations commenced some time before the matrimonial union was contemplated by plaintiff. There is rather more than a suspicion, based upon subsequent events, that she brought about the marriage with Mr. Granger with her mind's eye on his property.

The evidence falls short of showing disposition of the property in fraud of the prospective dower rights of an intended wife. This being true in fact, plaintiff made no case and there is no need to cite authority that such is the law.

The decree should be reversed and the bill dismissed, with costs to defendant.

Sharpe, C. J., and North, J., concurred with Wiest, J.

Sharpe, C. J. (*dissenting*). I am unable to concur in the opinion of Mr. Justice McAllister.

The decisive question in this case is whether or not the consideration for the conveyance by William R. Granger to defendant is sufficient to rebut any implication of fraud on plaintiff's marital rights. The implication of fraud arises from the fact that the conveyance was executed shortly before William R. Granger's marriage to plaintiff.

The burden of proving fraud is upon the plaintiff. The mere fact of making the deed just prior to the marriage without telling the plaintiff does not establish a fraudulent conveyance which equity will set aside. *Connelly* v. *Ford*, 202 Mich. 558. An antenuptial conveyance made in good faith will defeat a claim for dower. *Noah* v. *Noah*, 246 Mich.

324.  The good faith of this transaction depends entirely upon the existence of an adequate consideration for the conveyance made by William R. Granger.

The conveyance in this case arose out of business dealing between defendant, Sylvester B. Granger, William R. Granger and George L. Granger. To determine the good faith of the conveyance in question, the transaction should be viewed as one unit, even though it was broken down by the parties into two separate contracts. It is evident that both contracts were part of one transaction; and that one would not have been entered into if the other had not been agreed upon and carried out. Viewing these two transactions as a unit, the consideration involved was as follows: William R. Granger transferred $22,000 worth of property and assumed a contingent liability, for the life of George L. Granger, of $35 per month or less. William R. Granger received in exchange for this property the extinction of debts in the amount of $7,904 (total of $2,904 which he owed to defendant directly and $5,000 which he owed to the estate of Frances Nixon) and a life estate in the property which he conveyed. He at this time had a life expectancy of 11.68 years.

Viewed in this light, I do not think that it can be said that the plaintiff's husband, by the above transaction, perpetrated a fraud upon plaintiff's marital rights. This is especially true when one realizes that we have two uncertainties involved in this contract, *i.e.*, the life of William R. Granger and the life of George L. Granger. Upon these two facts depended the favorableness of the bargain.

In *Fraser* v. *Passage,* 63 Mich. 551, where a bill was filed by an administrator of an estate to set

aside as fraudulent to creditors a deed made by the deceased in his lifetime, we said:

"The fact that the price Passage paid for the property was less than the property was worth, while it was a relevant circumstance, if true, was no evidence of fraud, unless it was so small as to make the conveyance substantially a voluntary one, and this certainly cannot be reasonably claimed upon the record."

It certainly cannot be claimed that the consideration received by William R. Granger in this case was so small as to amount to substantially a voluntary conveyance.

The decree should be reversed, with costs to defendant.

NORTH and WIEST, JJ., concurred with SHARPE, C. J. BOYLES, J., did not sit.